UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

|  |  |  |
|---|---|---|
| LEGACY ROOFING SERVICES LLC, | : | CASE NO. 1:23-cv-01341 |
|  | : |  |
|  | : | OPINION & ORDER |
| Plaintiff, | : | [Resolving Doc. 6] |
|  | : |  |
| v. | : |  |
|  | : |  |
| MICHAEL FUSCO, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

---

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

With this order, the Court decides whether there is sufficient evidence to preliminarily enjoin Defendant Michael Fusco, a long-time roofing construction salesman, from working for Defendant Facility Products & Services LLC, a competitor of his earlier employer, Plaintiff Legacy Roofing Services LLC.  The Court considers two issues.  First, the Court considers whether sufficient evidence shows that Fusco should be restrained from sales work because Fusco arguably had trade secrets from Legacy Roofing.  Second, the Court considers whether Fusco has an enforceable non-solicitation agreement with Legacy Roofing.

*       *       *

When Defendant Fusco left his job at Plaintiff Legacy Roofing, Fusco took over 2,000 Legacy documents with him.  Then, after Fusco began his new job at Defendant Facility Products, Fusco allegedly used those documents to solicit Legacy clients.

Plaintiff Legacy Roofing sued Defendants Fusco and Facility Products, arguing that Defendants' actions violated trade secret law.  Legacy Roofing also claimed that Fusco

Case No. 1:23-cv-01341
GWIN, J.

breached a non-solicitation clause in Fusco's Legacy employment contract, and that Facility

Products tortiously interfered with that non-solicitation clause.

Legacy Roofing moves for a preliminary injunction requiring Defendants to return the

documents that Fusco took. Legacy Roofing also seeks to prohibit Fusco from soliciting

Legacy customers.

After carefully considering the parties' briefing, the record in this matter, and the

arguments made at hearing, the Court **DENIES** the preliminary injunction motion.

## I.    BACKGROUND

### A. Factual Background

Plaintiff Legacy Roofing and Defendant Facility Products compete in the commercial

roofing business.[1]  Defendant Fusco earlier worked as a Legacy employee.  After resigning

from Legacy Roofing, Fusco now works for Facility Products.[2]

In January 2020, Fusco joined Legacy Roofing as a senior regional account manager.[3]

In that role, Fusco handled sales calls, helped prepare bids for roofing projects, and managed

customer relationships for Legacy.[4]  Upon joining Plaintiff Legacy Roofing, Fusco signed an

employment contract with a non-solicitation clause.[5]  This non-solicitation clause barred

Defendant Fusco from soliciting business from all actual Legacy clients and some potential

Legacy clients for two years after Fusco resigned.[6]

For a time, both Legacy Roofing and Fusco were seemingly satisfied with their

arrangement.  But by early 2023, Fusco had lost faith in Legacy Roofing's business direction.

---

[1] Doc. 1 at ¶¶ 10, 12.  Because Legacy verified its complaint, the Court treats the complaint as an affidavit for purposes of Legacy's preliminary injunction motion.  *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).
[2] Doc. 1 at ¶¶ 29, 56.
[3] *Id.* at ¶ 29.
[4] *Id.*
[5] Doc. 1-1 at 3 (Page ID #: 41).
[6] *Id.*

Case No. 1:23-cv-01341
GWIN, J.

By then, Legacy Roofing owed Fusco outstanding commissions, was not paying some company credit cards, and was having difficulty purchasing materials for roofing projects.[7] As a result, Fusco began searching for a new job.

In February 2023, Fusco reached out to Facility Products to ask about job openings.[8] Discussions between the two progressed quickly, and by early March 2023, Facility Products offered Fusco a job.[9]  On March 15, 2023, Fusco resigned from his Legacy position.[10]  Five days later, Fusco joined Facility Products in a similar role.[11]

Fusco did not, however, make a clean break from Legacy.  Shortly before Fusco left Legacy, he downloaded 2,331 Legacy files onto a personal hard drive.[12]  And once Fusco began working at Facility Products, Fusco continued to seek business from some of the same clients he dealt with at Legacy Roofing.[13]  These actions prompted Legacy Roofing to sue.

### B.  Procedural History

On April 17, 2023, Plaintiff Legacy Roofing filed suit against Defendant Fusco in the Cuyahoga County Court of Common Pleas.[14]  On May 23, 2023, Legacy Roofing amended its complaint to add Facility Products as a defendant.[15]  As relevant here, the amended complaint contained claims for breach of Fusco's non-solicitation clause, tortious interference with contract, and violations of Ohio trade secret law.[16]

---

[7] Doc. 30-2 at 36:23–37:8; *see also* Doc. 31 at 40:2–41:8.
[8] Doc. 30-2 at 35:3–11.
[9] *Id.* at 37:21–38:7.
[10] Doc. 1 at ¶ 11.
[11] Doc. 30-2 at 38:2–4.
[12] Doc. 28-2 at ¶ 11; *see also id.*, Ex. B.
[13] *E.g.*, Doc. 1 at ¶¶ 59–63, 68–72.
[14] Compl., *Legacy Roofing Servs. LLC v. Fusco*, No. CV-23-978150 (Cuyahoga Cnty. Ct. Com. Pl. Apr. 17, 2023).  The Court may *sua sponte* take judicial notice of "developments in related proceedings in other courts of record." *Beiersdorfer v. LaRose*, No. 20-3557, 2021 WL 3702211, at *5 (6th Cir. Aug. 20, 2021) (citation omitted).
[15] Am. Compl., *Legacy Roofing Servs. LLC v. Fusco*, No. CV-23-978150 (Cuyahoga Cnty. Ct. Com. Pl. May 23, 2023).
[16] *Id.* at ¶¶ 47–53, 60–72.

Case No. 1:23-cv-01341
GWIN, J.

On June 7, 2023, the Court of Common Pleas denied Legacy's motion for a preliminary injunction without receiving any evidence.[17]

On July 3, 2023, Plaintiff Legacy Roofing voluntarily dismissed its state suit without prejudice.[18]  Just over a week after dismissing its state court case, on July 11, 2023, Legacy Roofing filed this suit in federal court.[19]

In its federal complaint, Legacy Roofing raised substantially the same claims regarding the same conduct that Legacy had raised in state court.[20]  However, to ensure federal jurisdiction, Legacy Roofing added a federal trade secret claim.[21]

Legacy then filed the instant motion for preliminary injunction and a request for expedited discovery.[22]  Defendants opposed the preliminary injunction motion.[23]  Legacy filed a reply in support.[24]

The Court permitted the parties to conduct limited discovery related to the preliminary injunction motion and ordered the parties to file supplemental briefs after completing that discovery.[25]  The parties did so.[26]

On December 19, 2023, the Court heard oral argument from the parties.

---

[17] Doc. 1 at ¶ 80 n.1; *see also* Journal Entry, *Legacy Roofing Servs. LLC v. Fusco*, No. CV-23-978150 (Cuyahoga Cnty. Ct. Com. Pl. June 8, 2023).
[18] Notice of Voluntary Dismissal, *Legacy Roofing Servs. LLC v. Fusco*, No. CV-23-978150 (Cuyahoga Cnty. Ct. Com. Pl. July 3, 2023).
[19] Doc. 1.
[20] *See generally id.*
[21] *Id.* at ¶¶ 98–109.
[22] Docs. 6, 7.
[23] Doc. 9.
[24] Doc. 10.
[25] Docs. 13, 15.
[26] Docs. 28, 29.

Case No. 1:23-cv-01341
GWIN, J.

## II.  LEGAL STANDARD

Preliminary injunctions are "designed to preserve the relative positions of the parties until a trial on the merits can be held."[27]  As such, a party "is not required to prove [its] case in full" to secure a preliminary injunction.[28]  But neither is a party entitled to a preliminary injunction as a matter of course, and courts do not issue preliminary injunctions lightly.[29]

As the Supreme Court has explained, "[a] preliminary injunction is an extraordinary and drastic remedy."[30]  Only when a party makes a "clear showing" that it is entitled to such relief can a court grant a preliminary injunction.[31]

Courts consider four factors when deciding whether to grant a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable injury; (3) how an injunction might cause substantial harm to others; and (4) the public interest.[32]

These four factors are part of a balancing test where a stronger showing on one factor can make up for a weaker showing on another.[33]  But two factors are mandatory: likelihood of success on the merits[34] and irreparable injury.[35]  Not even the strongest showing of another factor permits a preliminary injunction if there is no likelihood of success or no irreparable injury.

---

[27] *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009).

[28] *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

[29] *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017).

[30] *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (internal quotations and citation omitted).

[31] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

[32] *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 627 (6th Cir. 2013) (citation omitted).

[33] *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326 (6th Cir. 2019).

[34] *La.-Pac. Corp. v. James Hardie Bldg. Prods., Inc.*, 928 F.3d 514, 517 (6th Cir. 2019) ("[A] court must not issue a preliminary injunction where the movant presents no likelihood of merits success.").

[35] *D.T.*, 942 F.3d at 327 ("Thus, although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory.").

Case No. 1:23-cv-01341
GWIN, J.

## III.    DISCUSSION

Plaintiff Legacy Roofing justifies its request for a preliminary injunction under two theories.  First, Legacy argues that the Court should enjoin Defendants Fusco and Facility Products because Defendants violated federal and state trade secret laws.[36]  Second, Legacy argues that Fusco breached, and that Facility Products tortiously interfered with, Fusco's non-solicitation clause.[37]

The Court finds that Legacy Roofing has failed to meet the high bar for a preliminary injunction under either of its theories.

### A.  Effect of Legacy Roofing's State Suit

Before turning to the merits of Legacy Roofing's trade secret and contract claims, the Court first addresses what impact Legacy's earlier state lawsuit should have on these federal proceedings.  Defendants argue that, under *Birgel v. Board of Commissioners*,[38] this Court must follow the state court's earlier decision to deny a preliminary injunction.

In *Birgel*, the Sixth Circuit faced a procedural scenario like the one here.  The *Birgel* plaintiff had initially sued in Ohio state court.[39]  The Ohio trial court ruled against the *Birgel* plaintiff on his breach of contract claim.[40]  The *Birgel* plaintiff took an appeal.  On appeal, the Ohio appellate court agreed that the contract claim failed, but the Ohio appellate court reversed and remanded to allow the *Birgel* plaintiff to plead any non-contract claim he might have.[41]  The *Birgel* plaintiff then voluntarily dismissed his state case and filed a case in federal court raising an identical contract claim.[42]

---

[36] Doc. 6-1 at 7–12.
[37] *Id.* at 12–14.
[38] 125 F.3d 948 (6th Cir. 1997).
[39] *Id.* at 949.
[40] *Id.*
[41] *Id.* at 949, 952.
[42] *Id.* at 949.

Case No. 1:23-cv-01341
GWIN, J.

The federal district court held that the *Birgel* plaintiff's contract claim again failed.  In so holding, the federal district court reasoned that the earlier state court rulings controlled as law of the case.[43]  The Sixth Circuit affirmed but did not explicitly find that the district court's law of the case reasoning controlled.  The Sixth Circuit explained that "the state appellate court . . . arrived at a conclusive decision as to plaintiff's breach of contract claim."[44]

The Sixth Circuit did not specify how it reached that result.  Instead, the Sixth Circuit identified three possible sources for its decision: the law of the case doctrine, the *Erie* doctrine, and the preclusion doctrine.[45]

The Court finds that none of these three doctrines apply in this case, so the Court is not bound by the decisions in Legacy Roofing's earlier state lawsuit.

### 1.  Law of the Case

Law of the case does not apply in the circumstances of this case.  Under the law of the case doctrine, courts should usually not "reconsider a matter once resolved in a continuing proceeding."[46]  The law of the case doctrine seeks "to ensure that the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*."[47]

However, the law of the case doctrine is not an absolute mandate, it is a discretionary doctrine.  "[L]aw of the case does not bar a court from reassessing an issue if it believes good reasons exist to do so (such as a change in the law or an obvious mistake)."[48]  Federal Rule of Civil Procedure 54 lends further support: "[A]ny order or other decision, however

---

[43] *Birgel*, 125 F.3d at 950.
[44] *Id.* at 952.
[45] *Id.* at 951; *see also id.* at 952 (Contie, J., concurring) (noting that the panel majority did not specify the legal basis for the majority opinion).
[46] *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015) (citation omitted).
[47] *Id.* (internal quotation marks omitted) (emphasis in original) (quoting *Sherley v. Sebelius*, 689 F.3d 776, 780 (D.C. Cir. 2012)).
[48] *Samons v. Nat'l Mines Corp.*, 25 F.4th 455, 463 (6th Cir. 2022).

Case No. 1:23-cv-01341
GWIN, J.

designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

Law of the case does not apply because Legacy's dismissed state court suit is not Legacy's current federal suit.  Defendants disagree, implying that *Birgel* says that the law of the case doctrine makes earlier state case decisions binding in this new federal case.[49]

Subsequent decisions defeat that interpretation of *Birgel*.  The Sixth Circuit has emphasized that "[t]he defining feature of the law-of-the-case doctrine is that it applies only within the *same case*."[50]  When a plaintiff dismisses its state case and files a new federal case, those two cases are not the same.  As such, the state court's preliminary injunction denial does not act as the law of the case to decide Legacy Roofing's application for a preliminary injunction.

Even if *Birgel* permitted law of the case to apply from Legacy's dismissed state case to this federal case, it would still be inappropriate to apply law of the case here.  That is because law of the case does not apply "when the legal conclusions in a preliminary-injunction decision were based on an underdeveloped record, issued under time pressures related to the circumstances of the preliminary injunction at issue, or were otherwise not conclusively decided."[51]

---

[49] Doc. 9 at 11.
[50] *Edmonds v. Smith*, 922 F.3d 737, 739 (6th Cir. 2019) (emphasis added) (citations omitted); *see also GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, 339 (6th Cir. 2016) ("[L]aw-of-the-case doctrine is not used to prevent relitigation of the same issues across different cases.") (collecting authorities).
[51] *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021).

- 8 -

Case No. 1:23-cv-01341
GWIN, J.

When the state court denied Legacy's preliminary injunction request, the parties had not conducted discovery.[52]  But the parties have since had the opportunity to request documents, conduct written discovery, and hold depositions.[53]  In its discretion, the Court finds that this new discovery is good reason for not applying law of the case.

### 2. *Erie* Doctrine

Defendants' reliance on the *Erie* doctrine fares no better than their argument regarding the law of the case.  Under *Erie*, federal courts are required to follow the decisions of state appellate and supreme courts when deciding issues of state law.[54]  So, the *Erie* doctrine could have applied in *Birgel* because the state appellate court had ruled on the contract claim at issue in that case.[55]

However, in this case, a state appellate court never considered Legacy Roofing's preliminary injunction request.  The only state court decision was from the Ohio trial court.  Unlike state appellate decisions, state trial court decisions do not bind federal courts.[56]  Therefore the Ohio trial court's decision denying Legacy's preliminary injunction is not binding on this Court under *Erie*.

### 3. Preclusion Doctrine

Finally, preclusion does not bind this Court either.  Ohio preclusion law applies.[57]  In Ohio, both res judicata and collateral estoppel require a final judgment.[58]  Plainly, Legacy's

---

[52] Doc. 1 at ¶ 80 n.1.

[53] *See* Docs. 13, 15, 28-1 to -7, 29-1 to -3.

[54] *Birgel*, 125 F.3d at 951 (citing *Stoner v. N.Y. Life Ins. Co.*, 311 U.S. 464, 467–68 (1940)).

[55] *Id.* at 952.

[56] *Krakoff v. United States*, 439 F.2d 1023, 1025 (6th Cir. 1971).  In particular, federal courts are not "bound by a decision which would not be binding on any state court." *King v. Ord. of United Com. Travelers of Am.*, 333 U.S. 153, 161 (1948).  Ohio trial court decisions are not binding precedent on other Ohio courts.  *Wolf v. Gardner*, 386 F.2d 295, 297 (6th Cir. 1967).  So, Ohio trial court decisions are not binding on federal courts either.

[57] *Tarrify Props., LLC v. Cuyahoga Cnty.*, 37 F.4th 1101, 1109 (6th Cir. 2022).

[58] *Id.* (collateral estoppel); *Bus. Dev. Corp. of S.C. v. Rutter & Russin, LLC*, 37 F.4th 1123, 1129 (6th Cir. 2022) (res judicata).

Case No. 1:23-cv-01341
GWIN, J.

state case resulted in no final judgment because Legacy voluntarily dismissed its state case without prejudice.

Further, preliminary injunction rulings generally have no preclusive effect.[59]  That is because preliminary injunction rulings "are often made on an incomplete record and are inherently tentative in nature."[60]  A preliminary injunction decision can be preclusive only when it is "'clearly intended to firmly and finally resolve the issue,' rather than 'estimate the likelihood of success' of proving that issue."[61]

In evaluating whether a preliminary injunction is intended to finally resolve the issue, courts consider "whether the parties were fully heard, whether the court filed a reasoned opinion, and whether that decision could have been, or actually was appealed."[62]

In this case, three factors weigh strongly against treating the state court's preliminary injunction denial as final.  For one, although the Ohio court heard oral argument, it did not receive any preliminary injunction briefing from the Defendants.[63]  Put another way, the parties were not fully heard before the Ohio court made its decision.

Further, the Ohio court denied Legacy Roofing's preliminary injunction without any written decision and proceeded to set a discovery schedule and trial date.[64]  This indicates that the Ohio court did not intend to finally decide issues in the state case.

---

[59] *Radiant Glob. Logistics, Inc. v. Furstenau*, 951 F.3d 393, 397 (6th Cir. 2020) ("[A] preliminary injunction has no preclusive effect—no formal effect at all—on the judge's decision whether to issue a permanent injunction.") (quoting *Gjersten v. Bd. of Election Comm'rs*, 751 F.2d 199, 202 (7th Cir. 1984)); *see also Abbott Lab'ys v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1205 (Fed. Cir. 2007) (quoting *A.J. Canfield Co. v. Vess Beverages, Inc.*, 859 F.2d 36, 38 (7th Cir. 1988)).
[60] *Abbott Lab'ys*, 473 F.3d at 1205 (quoting *Canfield*, 859 F.2d at 38).
[61] *Id.* at 1206 (quoting *Canfield*, 859 F.2d at 38).
[62] *Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 474 n.11 (3d Cir. 1997) (citation omitted).
[63] Doc. 1 at ¶ 80 n.1.
[64] Journal Entry, *Legacy Roofing Servs. LLC v. Fusco*, No. CV-23-978150 (Cuyahoga Cnty. Ct. Com. Pl. June 8, 2023).

- 10 -

Case No. 1:23-cv-01341
GWIN, J.

Perhaps most significantly, the Ohio court made its decision before discovery.[65]  A preliminary injunction decision made without evidentiary support does not justify finding a final decision on the request for injunctive relief.[66]

Therefore, the Court finds that the state court's previous denial of Legacy's preliminary injunction has no preclusive effect.

### B.  Likelihood of Success on the Merits

#### 1.  Trade Secrets

Plaintiff Legacy Roofing has not shown that it is likely to succeed on any of its trade secret claims because Legacy has not shown that any files taken by Defendant Fusco are trade secrets.

Legacy Roofing's state and federal trade secret claims both require that Legacy prove the existence of a trade secret.[67]  And both Ohio and federal law define trade secrets similarly.  Under both Ohio and federal law, a plaintiff must show that the alleged trade secret (1) derives value from not being generally known or from not being readily ascertainable from proper means, and that (2) the owner took reasonable efforts to maintain secrecy.[68]

There is no dispute that Legacy Roofing took reasonable efforts to maintain the secrecy of its information, so the decisive issue is whether the files taken by Fusco derived value from not being generally known or readily ascertainable.

---

[65] Doc. 1 at ¶ 80 n.1.

[66] *Cf. Daunt*, 999 F.3d at 308 (a legal issue decided in a preliminary injunction decision is "not conclusively decided" in the law of the case context when the preliminary injunction decision is "based on an underdeveloped record").

[67] *Millennium Health, LLC v. Roberts*, No. 1:19-cv-2381, 2020 WL 2814440, at *16–17 (N.D. Ohio Mar. 4, 2020), *report and recommendation adopted*, 2020 WL 2812871 (N.D. Ohio May 29, 2020).  Both claims also require proof of misappropriation, and Ohio trade secret claims require proof that a defendant used the trade secret.  *Id.*

[68] 18 U.S.C. § 1839(3); Ohio Rev. Code § 1333.61(D).

Case No. 1:23-cv-01341
GWIN, J.

In this regard, Legacy's imprecision when describing its alleged trade secrets complicates the Court's analysis. Legacy Roofing describes its trade secrets differently from complaint to motion, and even between different paragraphs in the same document. Legacy Roofing's failure to specifically identify what it claims to be trade secrets makes it difficult for the Court to determine exactly what information Legacy argues is protected.

As best as the Court can tell, Legacy's alleged trade secrets fall into four general categories: (a) proprietary bidding methodologies; (b) project bids and proposals; (c) the underlying inputs for bids; and (d) customer lists and other customer information.[69] The Court addresses each category in turn.

### a. Proprietary Bidding Methodology

According to Legacy's 30(b)(6) representative, Legacy Roofing's proprietary bidding methodology is a customized version of generally available bidding software known as "The EDGE."[70] Specifically, Legacy Roofing customized its EDGE software to automatically enter some underlying inputs and to reduce the number of steps needed to generate a bid.[71]

Legacy Roofing has not shown that Defendant Fusco took a copy of Legacy's customized EDGE software. None of the files taken were software files. Rather, the files were primarily PDF, Microsoft Word, and Microsoft Excel files.[72] So, regardless of whether Legacy Roofing's customized EDGE software would qualify as a trade secret, Legacy is not likely to succeed because Legacy has not shown that Defendants took that software.

---

[69] *See* Doc. 1 at ¶¶ 2, 4, 18, 22–23, 99.
[70] Doc. 31 at 61:1–8.
[71] *Id.* at 61:11–63:23.
[72] *See* Doc. 28-2, Ex. B.

Case No. 1:23-cv-01341
GWIN, J.

### b. Project Bids and Proposals

Plaintiff Legacy Roofing also argues that its project bids and proposals are trade secrets. But "stale or 'obsolete information cannot form the basis for a trade secret claim because the information has no economic value.'"[73]

Legacy Roofing sells roofing construction services. It competes for roofing work, mostly commercial roofing work.[74] Because each roofing job involves significantly different scopes of work, different raw material costs, different general roofing market demand, and different geographic issues, roofing proposals for one project are inherently not transferable to other roofing projects.[75]

At hearing, the parties described that most commercial roofing jobs involve property owners conducting meetings with multiple prospective roofing companies at the work sites. After meeting with interested roofing contractors, the property owners solicit proposals.

In this case, Legacy Roofing usually holds bid pricing for six months.[76] Shortly before leaving Legacy Roofing, Defendant Fusco downloaded many of the bids Fusco had worked on while employed at Legacy.[77]

However, based on file names, many of the bids Fusco took are from 2019 to 2022.[78] And even if some of the bids were more recent, the latest bids that Fusco could have taken

---

[73] *Presidio, Inc. v. People Driven Tech., Inc.*, Nos. 2:21-cv-05779, 2:22-cv-03838, --- F. Supp. 3d ---, 2023 WL 5178345, at *17 (S.D. Ohio Aug. 11, 2023) (quoting *Fox Sports Net N., LLC v. Minn. Twins P'ship*, 319 F.3d 329, 336 (8th Cir. 2003)); *see also Health Care Facilities Partners, LLC v. Diamond*, No. 5:21-cv-1070, 2023 WL 3847289, at *15 (N.D. Ohio June 5, 2023) (same).

[74] Doc. 1 at ¶ 10.

[75] *See* Doc. 31 at 61:4–63:15 (describing numerous variables that go into generating a proposal).

[76] *Id.* at 205:22–206:3.

[77] *See* Doc. 28-2, Ex. B.

[78] *See id.*

Case No. 1:23-cv-01341
GWIN, J.

would be from March 2023, when Fusco left Legacy Roofing.[79]  It has now been over nine

months since that date, so most if not all the bids taken by Fusco are likely stale.

Legacy Roofing has not identified any bid that remains open, and nothing

demonstrates that stale bids still have any business value.  As such, Legacy has not shown

that it is likely to succeed in proving that the bids taken by Fusco are trade secrets.

### c.  Underlying Inputs

Legacy Roofing further argues that the underlying inputs for its bids—supply costs,

labor costs, and profit margin—are trade secrets.[80]  This inputs theory suffers from the same

defects as Legacy's bids theory:  The record shows that inputs are time-sensitive and therefore

become stale.

For one, Facility Products' 30(b)(6) representative testified that the costs of materials

have changed greatly over the past two to four years.[81]  In fact, Facility Products' bids

explicitly account for this change in material costs by including an escalation clause that

allow the parties to modify or terminate their agreement if there is a significant change in

costs.[82]

While there is no comparable evidence about Legacy Roofing's costs, there is no

reason to believe that Legacy deals with raw material costs that avoid this fluctuation.  If

anything, Legacy's practice of holding its bids open for six months[83] affirmatively suggests

that Legacy Roofing is affected by changing costs.  Unless the underlying inputs change,

there would be no need for the six-month bid expiration.

---

[79] Doc. 1 at ¶ 11.
[80] Doc. 6-1 at 1–2.
[81] Doc. 30-1 at 13:5–8.
[82] Doc. 28-7 at PageID #: 617.
[83] Doc. 31 at 205:22–206:3.

Case No. 1:23-cv-01341
GWIN, J.

Similarly, Legacy Roofing's 30(b)(6) representative testified that profit margin can change based on economic conditions.[84]  So, Legacy's profit margin from a two-year-earlier project says little about Legacy's profit margin today.

Therefore, Legacy Roofing has not shown that the underlying bid inputs are likely trade secrets.

### d.  Customer Lists and Information

Finally, Legacy Roofing argues that Fusco took trade secret customer lists and other customer information.

The Court begins with the customer lists.  While courts have found that customer lists can be trade secrets, that only applies to large compilations of customer contacts.[85]  Small or scattered amounts of customer contact information are not a trade secret since such information is readily ascertainable through public research.[86]

None of the files taken by Fusco appear to be compilations of customer contacts. Rather, they are mostly individual project files.[87]  Such files contain only scattered customer contact information, so they are not trade secrets.

To the extent that Legacy Roofing argues the compilation of approximately 2,300 files downloaded by Fusco is itself a trade secret customer list, that argument fails because Legacy has not demonstrated that these customer contacts are not otherwise readily ascertainable.

Roofing customers solicit bids from multiple roofing companies, whether through open bids or by seeking multiple private proposals.[88]  Although some customers may at times

---

[84] Doc. 31 at 101:1–9.
[85] *Total Quality Logistics, LLC v. EDA Logistics LLC*, No. 1:21-cv-164, — F. Supp. 3d —, 2023 WL 5057333, at *9 (S.D. Ohio July 31, 2023).
[86] *Id.* at *9.
[87] *See* Doc. 28-2, Ex. B.
[88] Doc. 31 at 84:6–85:13.

Case No. 1:23-cv-01341
GWIN, J.

seek purely private proposals from only a single company,[89] the case evidence does not suggest a significant number of customers do so. Since customers freely contact multiple roofing companies for project proposals, the current record shows that customer contacts are readily ascertainable.

Legacy Roofing has also failed to show that the other customer information taken by Fusco is likely to be a trade secret. For one, Legacy has been vague in describing the customer information that Fusco allegedly took. It is unclear whether Legacy Roofing believes that all information about Legacy customers is trade secret, or if there are only certain categories of customer information that are trade secrets. To determine the types of information in Fusco's files, the Court can only rely on file names.

For most of the files, the file name provides little information about what the file contains. Where the file names do give an indication of what the files contain, the information in those files is not trade secret. For example, Legacy points to two files named "7120 KRICK RD building floor plan - REV 1.23.23" and "Krick New Dock Positions 12-07-22 (1)." These two files appear to contain floor plan or layout information for a project at Krick Road. But a potential customer's building floor plan is not proprietary to Legacy Roofing. And any roofing company invited to bid by that customer could readily obtain the floor plan.

Likewise, many of Fusco's files appear to contain exterior photos.[90] Based on examples provided to the Court, these photos seem to be overhead shots of properties that can easily be obtained from Google Earth or a similar program.[91] And even if the photos

---

[89] Doc. 31 at 84:6–85:13.
[90] *See* Doc. 28-2, Ex. B.
[91] *See* Doc. 28-1 at PageID #: 496.

Case No. 1:23-cv-01341
GWIN, J.

were ground level shots, they would still be as easily ascertainable as floor plans.  A roofing company submitting a bid could simply ask the customer for access to the project site to take photos.

Legacy Roofing has not shown that the customer information taken by Fusco is likely a trade secret.

### 2.  Non-Solicitation Clause

Legacy Roofing is also unlikely to succeed on its contract-based claims because Legacy has not demonstrated that Fusco's non-solicitation clause is likely enforceable.

### a.  Enforceability of Restrictive Covenants

By their nature, non-solicitation clauses, non-compete clauses, and other restrictive employment covenants are anticompetitive.  By limiting or prohibiting employees from moving freely from one job to the next, restrictive employment covenants reduce labor market competition.

The negative effects that flow from restrictive employment covenants are stark.  For example, empirical research reveals that enforcing non-compete agreements noticeably depresses wages.[92]  And not only do workers who signed restrictive covenants receive lower wages, limiting worker mobility through restrictive covenants also reduces wages for even those workers who did not sign restrictive covenants.[93]

---

[92] *See* Natarajan Balasubramanian et al., *Locked In? The Enforceability of Covenants Not to Compete and the Careers of High-Tech Workers*, 57 J. Hum. Res. S349, S351 (2022) (finding that new-hire wages for Hawaiian technology workers increased by 4.2% after non-competes were banned for technology workers compared to a 0.7% increase across all Hawaiian workers); Evan Starr, *Consider This: Training, Wages, and the Enforceability of Covenants Not to Compete*, 72 I.L.R. Rev. 783, 785 (2019) (finding that an increase in non-compete enforcement from no enforcement to mean levels of enforcement would decrease wages by 4%); Matthew S. Johnson et al., *The Labor Market Effects of Legal Restrictions on Worker Mobility* 48 fig.3 (Oct. 12, 2021) (illustrating the negative relationship between earnings and non-compete enforceability), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3455381.
[93] Matthew S. Johnson et al., *supra*, at 26–28.

Case No. 1:23-cv-01341
GWIN, J.

Apart from these general economic effects, restrictive employment covenants impose burdens on the employees they bind. At best, restrictive covenants reduce a worker's leverage to negotiate better working conditions. If an employee raises complaints about a bad boss, inconvenient hours, or other issues, an employer has less incentive to address those complaints when that employee has signed a restrictive covenant—the employer knows that job opportunities become limited for the employee.

At worst, restrictive employment covenants can threaten an employee's very livelihood. If an employee must quit for some reason, or the employer fires her, a restrictive covenant could well prevent that employee from finding a new job to support herself.

For these reasons, courts have long been skeptical of restrictive covenants. Under early English common law, restrictive covenants were often prohibited.[94] And while limits on restrictive covenants have somewhat relaxed in the years since, many states continue to disfavor restrictive covenants.[95]

Ohio law disfavors restrictive covenants as well.[96] Although restrictive covenants are not *per se* unenforceable under Ohio law, a plaintiff seeking to enforce a restrictive covenant must meet a high bar. "In Ohio, a [restrictive] covenant is enforceable [only] to the extent it

---

[94] Michael J. Garrison & John T. Wendt, *The Evolving Law of Employee Noncompete Agreements: Recent Trends and an Alternative Policy Approach*, 45 Am. Bus. L.J. 107, 113–14 (2008).

[95] *E.g.*, *Heraeus Med., LLC v. Zimmer, Inc.*, 135 N.E.3d 150, 153 (Ind. 2019) ("Noncompetition agreements in employment contracts are in restraint of trade and disfavored by the law.") (internal quotations and citation omitted); *Murfreesboro Med. Clinic, P.A. v. Udom*, 166 S.W.3d 674, 678 (Tenn. 2005) ("In general, covenants not to compete are disfavored in Tennessee."); *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So. 2d 294, 298 (La. 2001) ("Louisiana has long had a strong public policy disfavoring noncompetition agreements between employers and employees."); *Coates v. Bastian Bros., Inc.*, 741 N.W.2d 539, 545 (Mich. Ct. App. 2007) ("[N]oncompetition agreements are disfavored as restraints on commerce . . . .").

[96] *Wigton v. Univ. of Cincinnati Physicians, Inc.*, 179 N.E.3d 241, 244 (Ohio Ct. App. 2021) ("Restrictive covenants are disfavored in the law . . . .") (citation omitted); *James B. Oswald Co. v. Stratos Wealth Partners, Ltd*, No. 1:18-cv-2114, 2020 WL 13454004, at *9 (N.D. Ohio Sept. 30, 2020) ("As courts in this district have explained, Ohio law disfavors restrictive covenants . . . .").

Case No. 1:23-cv-01341
GWIN, J.

is reasonable."[97]   And Ohio law requires the plaintiff to make a compelling showing of reasonableness—by clear and convincing evidence—before that plaintiff can enforce the restrictive covenant.[98]

The Ohio Supreme Court has developed a nine-factor list (often known as the *Raimonde* factors) for courts to consider when assessing the reasonableness of a restrictive employment covenant:

> 1. Whether the restriction is temporally and spatially limited;
>
> 2. Whether the employee represents the sole contact with the customer;
>
> 3. Whether the employee is possessed with confidential information or trade secrets;
>
> 4. Whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition;
>
> 5. Whether the covenant seeks to stifle the inherent skill and experience of the employee;
>
> 6. Whether the benefit to the employer is disproportional to the detriment to the employee;
>
> 7. Whether the covenant operates as a bar to the employee's sole means of support;
>
> 8. Whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and
>
> 9. Whether the forbidden employment is merely incidental to the main employment.[99]

---

[97] *FirstEnergy Sols. Corp. v. Flerick*, 521 F. App'x 521, 526 (6th Cir. 2013) (citing *Raimonde v. Van Vlerah*, 325 N.E.2d 544, 544 (Ohio 1975)).
[98] *Robert W. Clark, M.D., Inc. v. Mt. Carmel Health*, 706 N.E.2d 336, 340 (Ohio Ct. App. 1997) (citing *Restivo v. Fifth Third Bank of Nw. Ohio, N.A.*, 681 N.E.2d 484, 485–86 (Ohio Ct. App. 1996)); *see also Flerick*, 521 F. App'x at 526 (quoting *Chi. Title Ins. Corp. v. Magnuson*, 487 F. 3d 985, 991 (6th Cir. 2007)).
[99] *Flerick*, 521 F. App'x at 526 (citing *Raimonde*, 325 N.E.2d at 547).

Case No. 1:23-cv-01341
GWIN, J.

### b. *Raimonde* Factors

The first, third, fifth, sixth, seventh, and eighth *Raimonde* factors each suggest that Fusco's non-solicitation clause is unreasonable.

*Temporal and Spatial Limitations.*  While the non-solicitation clause has no explicit spatial limitation, it contains a de facto limitation.  Since Legacy Roofing primarily operates in Ohio and Pennsylvania,[100] the fact that Fusco's non-solicitation clause is limited to Legacy clients effectively limits the reach of the non-solicitation clause to Ohio and Pennsylvania as well.  This is a reasonable geographic scope.

However, the temporal limitation is not reasonable.  Fusco's non-solicitation clause would apply for two years.[101]  As the Court has described above, most of the Legacy information that Fusco took was likely to become stale after only six months.[102]  For this reason, Legacy Roofing has little interest in enforcing the non-solicitation clause more than six months.  So overall, the non-solicitation clause's limitations are not reasonable.

*Confidential Information and Trade Secrets.*  As the Court found above, Legacy Roofing does not show that Fusco took trade secret or other valuable confidential information.[103]  Many of the files contained old, stale information, or information about customer floor plans or photographs that could easily be acquired straight from the potential customers.  Customer or project information on long-ago-awarded work has no obvious value.  The lack of valuable information in Fusco's possession cuts against enforcing his non-solicitation clause.

---

[100] Doc. 1 at ¶ 10.
[101] Doc. 1-1 at 3 (Page ID #: 41).
[102] *See supra*, Section III.B.1.
[103] *Id.*

- 20 -

Case No. 1:23-cv-01341
GWIN, J.

*Employee's Inherent Skill and Experience.*  Fusco began working in the commercial roofing industry in 2006, meaning that he now has eighteen years of experience.[104]  Of those eighteen years, Fusco spent only three years at Legacy Roofing, from 2020 to early 2023.[105]  Since much of Fusco's skill and experience developed outside of Legacy, this factor weighs against reasonableness as well.

*Benefit to Employer and Detriment to Employee.*  Fusco's non-solicitation clause bars Fusco from soliciting or working for both actual Legacy clients and potential Legacy clients.[106]  The actual client restriction could be reasonable standing alone.  But by sweeping in potential clients, the non-solicitation clause disproportionately restricts competition without relation to protectable Legacy Roofing interests.

Although the scope of potential clients covered by the non-solicitation clause is limited to those clients that Fusco "received confidential information" about,[107] this limitation is too nebulous to be meaningful.  Not only would the limitation include potential clients that Fusco directly worked with, but it would also include any potential client that Fusco may have heard about from others at Legacy Roofing.  As such, this factor weighs against reasonableness.

*Employee's Sole Means of Support.*  There is little in the record about Fusco's ability to perform other work if the Court were to enforce Fusco's non-solicitation clause.  However, given that Fusco has worked in commercial roofing sales for the past eighteen years, it is reasonable to conclude that Fusco's primary marketable skills are in commercial roofing sales.  Restricting Fusco's ability to sell commercial roofing services to actual and potential

---

[104] Doc. 30-2 at 18:25–19:3.
[105] Doc. 1 at ¶¶ 11, 29.
[106] Doc. 1-1 at 3 (Page ID #: 41).
[107] *Id.*

Case No. 1:23-cv-01341
GWIN, J.

Legacy clients in Ohio and Pennsylvania would probably either force Fusco to move or greatly restrict Fusco's ability to earn a living. So, this factor weighs against reasonableness too.

*Development of Employee's Talent.* As noted above, Fusco learned the commercial roofing business long before he came to Legacy Roofing.[108] Legacy Roofing added little new training. Moreover, at least some of Fusco's client relationships were developed before Fusco joined Legacy.[109] Since it does not appear that Legacy did much to develop Fusco's sales talent, this factor weighs against reasonableness.

*       *       *

The second, fourth, and ninth *Raimonde* factors weigh in favor of finding Fusco's non-solicitation clause to be reasonable.

*Sole Contact with Customer.* The record contains little information on whether Fusco was the sole contact with many of Legacy's customers. However, at hearing, the parties agreed that Fusco was the primary contact for most of the customers Fusco worked with while at Legacy Roofing. So, this factor weighs in favor of reasonableness.

*Unfair Competition.* The Sixth Circuit has found that it could be considered unfair competition for an employee to target his former employer's clients.[110] Therefore, a non-solicitation clause protecting an employer's clients would be reasonable under this factor.

*Relationship Between Forbidden Employment and Main Employment.* Here, the work that Fusco does for Facility Products is very similar to the work that he did for Legacy

---

[108] *See* Doc. 30-2 at 18:25–27:21.
[109] *Id.* at 65:2–16.
[110] *Flerick*, 521 F. App'x at 527.

Case No. 1:23-cv-01341
GWIN, J.

Roofing. Because Fusco sells commercial roofing services in both jobs, this factor weighs in

favor of enforcing the non-solicitation clause.

*      *      *

Taken together, the *Raimonde* factors show that Fusco's non-solicitation clause is

unreasonable. That said, when a restrictive covenant is unreasonable, Ohio law permits

courts to "construct a reasonable covenant between the parties, and to grant injunctive

relief," "to the extent necessary to protect an employer's legitimate interests."[111]

Here, the Court finds that it would be inappropriate to reconstruct Fusco's non-

solicitation clause to grant any injunctive relief. Most of the potentially valuable, potentially

proprietary information in Fusco's possession became stale six months after Fusco left Legacy

Roofing.[112] More than six months have already passed since Fusco resigned from Legacy.

Given that most of the files taken by Fusco are now stale, the primary effect of

enforcing Fusco's non-solicitation clause would be to limit Defendants' ability to benefit from

Fusco's personal customer relationships. As Legacy conceded at hearing, Legacy has no

proprietary interest in Fusco's personal relationships. That is especially so for customer

relationships that Fusco developed before he joined Legacy Roofing.[113]

The Court finds that Legacy is unlikely to prove that Fusco's non-solicitation clause is

enforceable. As such, Legacy is unlikely to succeed in its breach of contract claim against

Fusco or in its tortious interference claim against Facility Products.[114]

---

[111] *Raimonde*, 325 N.E.2d at 548–49.

[112] *See supra*, Section III.B.1.

[113] *See* Doc. 30-2 at 65:2–16.

[114] *Cheryl & Co. v. Krueger*, 536 F. Supp. 3d 182, 209 (S.D. Ohio 2021) (a tortious interference claim fails when there is no valid, enforceable contract).

- 23 -

Case No. 1:23-cv-01341
GWIN, J.

### C. Irreparable Harm

Legacy Roofing has also failed to demonstrate that it would suffer irreparable harm if the Court were to deny a preliminary injunction.

Legacy argues that loss of customer goodwill is irreparable harm.[115] As a general matter, Legacy is correct. But Legacy has not shown that it will lose goodwill or customers without a preliminary injunction.

For as the Court has repeatedly emphasized, any valuable information taken by Fusco likely became stale six months after Fusco left Legacy.[116] More than six months have passed since Fusco resigned, so moving forward, any harm will be minimal.

Additionally, Legacy Roofing is only harmed if it loses business to Facility Products. If Legacy loses a bid to a third-party competitor, the cause of that loss is neither trade secret misappropriation nor breach of Fusco's non-solicitation clause.

The record shows that most projects that Facility Products bids for are open bids involving multiple competitors.[117] So, when Facility Products competes against Legacy Roofing for a project, there are third-party competitors bidding as well. Nothing in the record suggests that Facility Products would otherwise win most of those projects, or win even a significant number of those projects.

Although Legacy Roofing obtains some work outside of open bids,[118] the above analysis does not change. Legacy can only be harmed when it competes with and loses to Facility Products. If Facility Products is not competing for Legacy Roofing's potential projects, there is no harm. Indeed, the fact that Facility Products more usually submits open

---

[115] Doc. 6-1 at 15 (citing *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 530 (6th Cir. 2017)).
[116] *See supra*, Section III.B.1.
[117] Doc. 30-1 at 56:25–57:18.
[118] Doc. 31 at 84:13–25.

Case No. 1:23-cv-01341
GWIN, J.

bids while Legacy generally submits private proposals suggests that the two companies compete for mostly different projects.  It would be unusual if a customer approached Facility Products for an open bid while approaching Legacy for a private proposal for the same project.

Lastly, to the extent that Legacy Roofing argues it has already been harmed by lost customers, Legacy raises past harms that are less relevant to a preliminary injunction. Injunctions can prevent only ongoing or future harms.[119]  For the reasons above, Legacy Roofing has not demonstrated any ongoing or future harms.

### D.  Harm to Others and the Public Interest

In deciding whether to issue a preliminary injunction, the Court must also weigh the potential for significant harm to others and the public interest.

As the Court explained above, granting the preliminary injunction would restrict Fusco's ability to support himself.[120]  Because Fusco has a family,[121] this would also restrict his ability to support his family.  The potential harm to his family weighs against the preliminary injunction.[122]

Because Legacy Roofing shows little evidence that it gave Fusco any specialized training or gave Fusco customer access that Fusco did not already have, Legacy mostly seeks

---

[119] *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) ("To win declaratory or injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm.") (internal quotations and citation omitted).

[120] *Supra*, Section III.B.2.b.

[121] Doc. 30-2 at 123:3–14.

[122] *Ray v. Fifth Third Bank, N.A.*, No. 1:21-cv-76, 2022 WL 974341, at *10 (S.D. Ohio Mar. 31, 2022) (loss of ability to support family is a substantial harm weighing against a preliminary injunction), *appeal dismissed*, No. 22-3411, 2023 WL 142260 (6th Cir. Jan. 10, 2023), *and aff'd*, No. 22-3387, 2023 WL 142443 (6th Cir. Jan. 10, 2023); *Quaker Chem. Corp. v. Castrol Indus. N. Am., Inc.*, No. 1:08-cv-449, 2009 WL 10679467, at *13 (S.D. Ohio Sept. 30, 2009) (inability to or difficulty in supporting family is a substantial harm); *Fadalla v. Life Auto. Prods., Inc.*, No. 06-2679, 2007 WL 2746940, at *4 (W.D. Tenn. Sept. 18, 2007) (barring a defendant from working in the field where he has established expertise and experience risks substantial harm to his family).

Case No. 1:23-cv-01341
GWIN, J.

benefit from reduced market competition.  But in a free market economy, society benefits where productive inputs are used where they make their greatest contribution.

Absent some protectable interest, the public interest benefits by the free flow of productive assets that would come from denying the preliminary injunction.

## IV.   CONCLUSION

The Court finds that Legacy Roofing has not established any likelihood of success and has not shown that it will suffer irreparable injury.  The lack of either one of these factors on their own is sufficient grounds to deny the preliminary injunction.  So, Legacy's failure to establish either factor is fatal to its preliminary injunction request.

Even if Legacy Roofing had successfully demonstrated that it has a likelihood of success and will suffer irreparable injury, for the reasons above, Legacy has at most made a weak showing of each factor.  Since both the substantial harm and public interest factors weigh against an injunction, Legacy Roofing still would not have made the "clear showing"[123] necessary for an injunction.

Therefore, the Court **DENIES** Legacy's preliminary injunction motion.

IT IS SO ORDERED.


Dated: January 8, 2024                                  s/      *James S. Gwin*
                                                       JAMES S. GWIN
                                                       UNITED STATES DISTRICT JUDGE

---

[123] *Winter*, 555 U.S. at 22.